IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAFON CANTY, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. SAG-21-3151 |
| FRANK B. BISHOP, | * | |
| LT. CRITES, | | |
| SGT. A. CARR, and | * | |
| OFFICER SAVILLE, | | |
| Defendants | * | |

***

<u>**MEMORANDUM OPINION**</u>

In response to this civil rights complaint, defendants Frank B. Bishop, Lt. Crites, Sgt. A. Carr and Officer Saville filed a motion to dismiss or, in the alternative, motion for summary judgment.  ECF No. 17.  Plaintiff Dafon Canty opposes the motion.  ECF Nos. 19, 20, 21. No hearing is necessary to resolve the issues.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, Defendants' motion will be granted in part and denied in part.

**BACKGROUND**

**I.  Plaintiff's Allegations**

Canty is a Maryland state inmate, who at all times relevant to this case has been incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.  On November 23, 2020, he was housed in Housing Unit 1, A Tier, Cell 27 on Administrative Segregation.  ECF No. 1 at 3. Around 8:00 a.m., an officer escorted a nurse onto the tier for medication distribution.  Another inmate on the tier held their door slot[1] open and got into a dispute with the officer and nurse, which resulted in their leaving the tier without giving Canty his daily

---

[1] The "door slot" in a cell is opened to permit correctional staff to serve medication and meals to inmates, and to provide inmates with a telephone when required.  It is locked at all other times and inmates are not permitted to hold the door slot open for any reason.  ECF No. 17-3 at 1, ¶ 3.

anxiety medication, which he takes no later than 8 a.m. each morning. The nurse and officer came back onto the tier a few minutes later, but another inmate held the slot open and got into a dispute with the officer.  Again, the officer and nurse left the tier without giving Canty his medication.  On each occasion, Canty yelled out to the officer and nurse about his not receiving his medication. ECF No. 1 at 3.

Approximately 15 minutes later, Sgt. Carr came on the tier and spoke to other inmates about telephone calls. ECF No. 1 at 3. Canty yelled to Sgt. Carr that he needed his medication because his anxiety was worsening. Sgt. Carr replied that there was nothing she could do because the inmates were holding their slots open.  *Id.*  She then left the tier.  *Id*.  Canty's anxiety continued to rise.  *Id*. at 4. At approximately 9:30 a.m., Canty suffered an anxiety attack during which he paced the floor, sweated, worried, and bit his nails.  *Id*.

A few minutes later, Sgt. Carr began to open the cell door slots of inmates so that lunch could be delivered.  When Sgt. Carr approached Canty's cell, Canty again advised that he was suffering from anxiety, but Sgt. Carr ignored him. ECF No. 1 at 4. A few minutes later, Sgt. Carr and Officer Saville began to close the slots as the lunch trays were collected.  But before Officer Saville reached Canty's cell, several inmates held their slots open.  *Id*. When Sgt. Carr came to Canty's cell, Canty asked her for a building lieutenant or his medication.  Sgt. Carr responded, "I'm not getting no fucking medication or Lieutenant fuck your meds." *Id*. Canty made his request again and put both of his hands in the slot to hold it open. Sgt. Carr then deployed mace on Canty's body and face.  *Id*. at 5.  Canty used his plastic property bag to try to cover the slot but Sgt. Carr punched and pushed Canty in order to have an opening to spray the mace. *Id*. Sgt. Carr then stepped back while Canty choked, gasped for air, and panicked.  *Id*.

A few seconds later Officer Saville came to Canty's cell and with Sgt. Carr pushed the

2

door slot closed, locked it, and told Canty he was not coming out. *Id*. Canty asked to be removed

from the cell but Ofc. Saville and Sgt. Carr walked away. *Id*. After the cell aired out, Canty cleaned

both himself and the cell. *Id*.

Approximately 35-40 minutes later, Lieutenant Crites came to Canty's cell and removed

him in order to take pictures of Canty and his cell door.  Canty explained there was no point in

taking pictures because Canty had already cleaned himself and his cell. *Id*.  Canty was taken to the

multipurpose room where a nurse cleared him.  While waiting to see the nurse, Sgt. Carr stopped

in and told him, "you better not piss me off next time." *Id*. at 6.

Later that day, Officer Saville threw a rule violation report into Canty's cell.  Because the

notice was not properly delivered to him, Canty was unable to request witnesses or evidence.  *Id*.

Canty also contends that Sgt. Carr falsified the report. *Id*.

Attached to the complaint are affidavits from inmates Jordan Jennings and James Young

who confirm Canty's version of events; *i.e.*, that Canty requested his medication and reported to

officers that he was suffering a panic attack; that Sgt. Carr screamed profanity at Canty and then

began to spray Canty with a chemical agent; that Sgt. Carr punched the slot after Canty tried to

block the slot so that she could deploy additional spray into the cell; that she left Canty in his cell

for approximately an hour after deploying the chemical agent; and that after Canty was escorted

from his cell and returned, Officer Saville threw Canty's notice of inmate rule violation into the

cell.  ECF No. 1-2 at 1 (Jennings Decl.); ECF No. 1-2 at 2 (Young Decl.)

Canty requests $120,000 in compensatory damages, $250,000 in punitive damages, and

unspecified declaratory relief. With his complaint and opposition, Canty has submitted

declarations, including his own and those of fellow inmates in support of his allegations.[2]  In

---

[2] In addition to the declarations attached to the Complaint, Canty has also provided the declaration

declarations filed with the Court, he seeks to introduce new claims regarding retaliation. ECF No. 16 and 19.

## II.  Defendants' Response

On November 23, 2020, Sgt. Carr was distributing meals on Canty's housing tier. ECF No. 17-3 at 1, ¶ 3; ECF No. 17-4 (Use of Force Report). When she approached Canty's cell and unlocked his security slot, Canty immediately put his property bag through the slot. Sgt. Carr directed Canty to remove the bag to clear the slot, but he refused. ECF No. 17-3 at 2, ¶ 5. Sgt. Carr then tried to pull the bag through the slot, in order to clear the slot, but Canty pulled it back and a struggle ensued. *Id*. Sgt. Carr then deployed a short burst of pepper spray toward Canty through the slot in order to gain Canty's compliance with her orders. *Id*. Sgt. Carr avers that the spray hit the cell door and Canty's arms but did not reach or affect his face. *Id*. Canty then complied with Sgt. Carr's orders. As a result of the incident, Sgt. Carr wrote a Use of Force Report and advised Lt. Crites of the altercation. *Id.*; ECF No. 17- 4. Sgt. Carr avers that Canty did not request or reference his medication, nor did he exhibit symptoms of increased anxiety or a panic attack. ECF No. 17-3 at 2, ¶ 7. Sgt. Carr further explains that she does not distribute inmate medications and is unaware of what, if any, medications were prescribed to Canty at the time of the incident. *Id*. at ¶ 8.

On the date of the incident Lt. Crites was advised by Sgt. Carr that she was involved in a use of force incident with Canty and pepper spray was deployed. ECF No. 17-5 at 1, ¶¶3-4 (Crites Decl.). Lt. Crites also avers that Sgt. Carr advised him she requested Canty be handcuffed so he could be removed from his cell but he refused. *Id*. at ¶ 6. Lt. Crites went to Canty's cell but Canty continued to refuse to be handcuffed so that he could be removed from the cell. *Id*. Ultimately

---

of inmates Antonio Moore (ECF No. 20-1 at 5-6), and "John Doe" (ECF No. 20-1 at 7).

Canty complied with Lt. Crites' request and Lt. Crites was able to place Canty in handcuffs and escort him for evaluation by a nurse who cleared Canty to return to his cell. *Id*.; ECF No. 17-5 at 14. Lt. Crites reports that Canty was offered a decontamination shower but he refused. ECF No. 17-5 at 2, ¶ 7. After Canty's cell was decontaminated, he was escorted back to his cell without further incident. *Id*.

As result of the incident Canty was issued a notice of inmate rule infraction and served with a notice of hearing which he refused to sign. ECF No. 17-4 at 11-13; ECF No. 17-6; ECF No. 17-9. Subsequently, Canty accepted a plea offered by the facility and was sentenced to a period of 30 days segregation and the revocation of 60 days of good conduct credits. ECF No. 17-6 at 2.

Defendants deny that the Internal Investigation Division investigated or issued a case number regarding this matter. ECF No. 17-7 at 2, ¶¶ 6-7 (Brengle Decl.). Defendants further offer that two days after this incident, Canty was issued a second rule violation for refusing to close his slot when meals were being distributed. ECF No. 17-8. On that day, Canty demanded a phone call but Officer Muir explained that he was not entitled to a phone call that day. Canty kept his arms in the slot and refused to have the slot closed until he received a phone call. Ofc. Muir left the scene and reported the incident to the Officer in Charge. *Id*.

## STANDARD OF REVIEW

Defendants' dispositive motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Canty was provided such notice. He also received notification from the Clerk of defendants' dispositive motion and the opportunity to reply with exhibits and declarations and has done so. Thus, conversion of this motion in part to one for summary judgment is appropriate and this Court will consider all of the exhibits filed. Certain of the claims, specifically, the claims against the defendants in their official capacities and the claims against Warden Bishop, will be dismissed instead, because those claims fail under a more basic pleading standard.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano,* 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), cert. denied, 541 U.S. 1042 (2004).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the

case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh,* 848 F.3d 235, 238 (4th Cir. 2017).  The court also is mindful of its obligation to construe liberally the submissions of a self-represented plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Importantly, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's Cty*., 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Dennis*, 290 F.3d at 644-45.  Where there is conflicting evidence such as competing affidavits, summary judgment is generally inappropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## DISCUSSION

Defendants assert that they are entitled to dismissal of the claims against them or summary judgment in their favor, raising affirmative defenses of Eleventh Amendment immunity and qualified immunity, and argue (1) that Canty has failed to allege sufficient personal involvement in the matters alleged as to Warden Bishop and Officer Saville, and (2) that Canty has failed to state an Eighth Amendment claim for excessive use of force.

## A.  Eleventh Amendment-All Defendants

The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Defendants are Maryland state employees.  Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself.  *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).  Accordingly, the claims against Defendants in their official capacities are barred by the Eleventh Amendment., *see Pennhurst*, 465 U.S. at 100–01, and will be dismissed with prejudice.

## B.  Defendant Bishop

In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation.  *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff.  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, Canty has not alleged any personal participation by Defendant Bishop. Rather, Canty alleges that Bishop was the Warden of NBCI at the time of the incident. These conclusory statements do not support a claim for supervisory liability. Canty has not provided facts indicating that any of the other named Defendants acted in this instance under the direction of Warden Bishop. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not satisfy Rule 8's basic pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Nor has Canty alleged any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse"). Accordingly, Canty's claims against Warden Bishop shall be dismissed without prejudice.

**C. Due Process**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves

complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592.  There

is no constitutional right to confront and cross-examine witnesses or to retain and be appointed

counsel.  *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501,

504-05 (4th Cir. 2004).  As long as the hearing officer's decision contains a written statement of

the evidence relied upon, due process is satisfied.  *See Baxter*, 425 U.S. at 322, n.5.

Federal courts do not review the correctness of a disciplinary hearing officer's findings of

fact.  *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980).  The findings will only be

disturbed when unsupported by any evidence, or when wholly arbitrary and capricious.  *See Hill*,

472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945

F.3d at 171-72.  As long as there is some evidence in the record to support a disciplinary

committee's factual findings, a federal court will not review their accuracy.  The mere fact that a

DOC rule governing adjustment hearings was violated, does not necessarily equate to a due process

violation.  *Riccio v. Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) ("a state does not necessarily

violate the constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp.

1180, 1183 (W.D. Va. 1993) ("Even if state law creates a liberty interest, violations of due process

are to be measured against a federal standard of what process is due.").

Defendants do not directly address Canty's allegation that his due process rights were

violated.  Canty contends that Officer Saville simply threw the Notice of Rule Infraction into his

cell, depriving him of the opportunity to request evidence and witnesses at his rule violation

hearing.  ECF No. 1 at 6. Canty also alleges that Sgt. Carr falsified the Notice of Rule Infraction.

While the parties dispute whether Canty was ever properly provided a copy of the notice,

Defendants contend that Canty pled guilty to the rule infractions and therefore, presumably,

waived his right to call witnesses or enter evidence.  Canty, however, disputes that he pled guilty

to the rule violation and claims that he pled guilty to a different rule infraction which occurred days later.  Canty claims that Defendants have manipulated documents to make it appear as though he pled guilty to the rule violation arising from the incident with Sgt. Carr.  ECF No. 20 at 14. The verified evidence and declarations provided by the parties conflict as to the disciplinary proceedings that resulted in the altercation between Canty and Sgt. Carr. Factual questions remain, therefore, as to whether Canty was properly served with the rule violation and/or notice of hearing and whether he pled guilty to the rule violation involving Sgt. Carr.  Summary judgment is therefore denied on this issue.

**C.  Eighth Amendment**

Whether the force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  The Court must look at the need for the application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, the record shows that the events began when Canty did not receive his prescribed medication.  When Sgt. Carr came to Canty's cell during lunch, the parties agree that Canty held his slot open.  But what transpired after that is disputed. Canty maintains that he held the slot in order to ask about not receiving his prescribed medication and that, without warning, Carr immediately sprayed a chemical agent into his cell.  Other inmates, apparent witnesses to the event, corroborate Canty's description. Sgt. Carr contends, to the contrary, that she knew nothing about Canty's failure to receive medication and that when she attempted to remove the property bag

Canty used to hold the slot open, a struggle ensued, resulting in her deploying the chemical agent.

The parties further dispute what happened after Sgt. Carr sprayed the chemical agent. While Lt. Crites avers that Sgt. Carr told him Canty refused to be handcuffed so that he could be removed from his cell, that information is not contained in Sgt. Carr's affidavit or in her use of force report prepared close in time to the incident. Canty contends that Sgt. Carr and Officer Saville closed his slot and told him they would not remove him from his cell. If Sgt. Carr deployed the chemical agent as Canty alleges, then there is a question whether the force used constituted a good faith effort to restore prison discipline and security or an infliction of force in a malicious and sadistic manner. Further, Canty, along with two other inmates, contend he was left in the cell for close to an hour after the chemical agent was sprayed. The parties dispute whether the delay was attributable to Canty's refusal to be handcuffed or to malicious behavior on the part of Sgt. Carr, Officer Saville, and Lt. Crites. The parties' verified evidence and declarations conflict.[3] Thus, resolution of these issues involves questions of credibility inappropriate for summary judgment.

**D. Qualified Immunity**

Defendants argue they are entitled to qualified immunity and that summary judgment is appropriate on that basis. However, Defendants offers no real argument for application of the doctrine, aside from boilerplate statements setting out the legal standard. The defense therefore fails. Further, the qualified immunity defense is unavailing, both because the constitutional rights were well-established at the time of the incidents at issue and because there exists a material

---

[3] According to the use of force investigation, the tier camera captured the incident, but that video was not provided to the Court or, apparently, reviewed by the investigator. *See e.g.* ECF No. 17-4 at 3 ("Video surveillance of this incident was captured on the ViconNet Video Surveillance System and issued Archive Number 20-NB-188.") It is unclear whether the video would resolve the parties' disputed facts.

dispute of fact regarding whether conduct allegedly violative of Canty's constitutional rights actually occurred. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). While it is true that qualified immunity is ordinarily determined at the summary judgment stage of litigation, *see Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003), the defense of "[q]ualified immunity does not, however, override the ordinary rules applicable to summary judgment proceedings." *Willingham*, 412 F.3d at 559, citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). As noted, there are genuine disputes of material fact that preclude summary judgment at this time. *See Willingham*, 412 F.3d at 559. Thus, qualified immunity does not serve as a basis for summary judgment on the present record.

## CONCLUSION

For these reasons, the claims against each Defendant in their official capacity will be dismissed with prejudice, and the claims against Defendant Bishop will be dismissed without prejudice. The remaining motion for summary judgment will be denied. Because it is anticipated that discovery will be necessary to complete the factual record, this Court will appoint counsel to assist Canty as this case proceeds. A separate order will follow.

January 18, 2023                                    /s/
Date                                         Stephanie A. Gallagher
                                             United States District Judge